WESTERN UNION TELEGRAPH COMPANY *v.* ROBERTSON.

Opinion delivered December 13, 1920.

1. MASTER AND SERVANT—BURDEN OF PROOF.—An injured employee who alleges that a benefit fund committee has made a false and fraudulent finding as to his injuries for the purpose of depriving him of payments justly due him from the benefit fund has the burden of proving that fact.

2. MASTER AND SERVANT—RELEASE.—A written agreement by which an employee released claims against the employer for personal injuries in consideration of participating in disability benefits is valid and binding upon both parties.

3. MASTER AND SERVANT—CONCLUSIVENESS OF BENEFIT FUND COMMITTEE'S FINDING.—Where an injured employee agreed that the benefit fund committee's findings as to questions of fact should be conclusive, the committee's finding that his injuries were not permanent, thereby terminating benefit payments to him, is conclusive, even though the committee was honestly mistaken as to the facts.

4. MASTER AND SERVANT—FRAUD IN FINDING OF BENEFIT FUND COM-
MITTEE.—A finding of a benefit committee that an employee had
not been permanently injured *held* not fraudulent where made in
good faith according to the customary methods and the regula-
tion of the plan, though the employee was not notified that the
committee was making the investigation nor given an opportu-
nity to protest personally against such finding.

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; reversed.

*H. C. Mechem* and *John W. & Jos. M. Stayton*, for appellant.

1. The plan for employees' pensions, benefits, in-
surance, etc., was a voluntary step upon appellant's part.
It was something given to employees over and above the
regular schedule of wages to provide a source of income
in case of accident, sickness or death. 171 Pac. 392.
Appellee's right to recover is controlled by the regula-
tions; the plan and regulations therein are an offer and
appellee's release was an acceptance thereof, and under
the regulations the committee was the arbiter of all ques-
tions of fact, and its decision is binding on appellant and
appellee. 118 N. E. 348; 53 N. Y. Supp. 98; 167 N. Y.
530. The committee passed upon appellee's claim, mak-
ing him certain allowances in full and his benefits ceased.
167 N. Y. 530; 171 Pac. 392. The action of the commit-
tee is final, and all payments ceased. 118 N. E. 348. The
failure of the committee to call appellee before it is not
evidence of bad faith. 118 N. E. 348; 215 Mass. 425.
See, also, 106 Mass. 389; 85 Me. 68; 57 Conn. 105; 83
N. Y. 909; 187 Fed. 730; 116 Ky. 287; 165 Mo. App. 30;
220 Ill. 436. Under these decisions the peremptory in-
struction for defendant should have been given, because
the failure of the committee to have appellee before it
in person was not evidence of fraud or bad faith, and
appellee did actually appear twice before investigators
of the committee and submit to physical examination,
offering the best evidence he could possibly have pre-
sented.

2. It was error to strike from the deposition of Fred T. Albert the matter objected to by appellee. The evidence was admissible. 27 Utah 66; 74 Pac. 427; 83 Oregon 528; 163 Pac. 600; 17 Pa. Co. 1555.

3. It was error to refuse instruction No. 5 and to modify it; also in giving instruction No. 1 for appellee. It was also error to give No. 2 asked for by appellee. They assume that the wages earned by appellee were $3.50 per day and were small wages. That was a matter for the jury to determine, and not for the court.

*Chas. F. Cole* and *S. M. Bone,* for appellee.

1. There was no error in giving instructions Nos. 1 and 5. 118 S. W. 268; 49 Ark. 417; Kerr on Ins., §§ 385-6; 4 Joyce on Ins., § 3031.

2. There was absolutely no evidence from which the jury could find that appellee was "able to earn a livelihood in an employment suited to his capacity," and appellant was not, under the proof, entitled to an instruction submitting that question to a jury but appellant was given the advantage of it in other instructions. The court properly instructed the jury, and the evidence sustains the verdict.

WOOD, J. The appellee, while working for appellant, on the 10th day of February, 1916, was injured by an accident. The appellant inaugurated what is designated "Plan for Employees' Pensions, Disability Benefits and Insurance." The plan, among other things, provided:

"Section 6. (1) All employees of the company on January 1, 1913, and thereafter shall be qualified to receive payments under the regulations on account of physical inabilities to work by reason of accidental injury during employment while in the performance of work for the company. Such payments are hereafter referred to in these regulations as accident disability benefits.

"(2)   Payments while disabled by accident received during employment occurring in and due to the performance of work for the company shall be:

"(a)   Total disability—full pay for thirteen weeks and half pay for remainder of disability, not exceeding six years in all.

"(b)   Partial or temporary disability—full pay for thirteen weeks and half pay until able to earn a livelihood, not exceeding six years in all.

"(c)   If the injury is of a permanent character, benefits will cease when the employee shall be declared by the committee to be able to earn a livelihood in an employment suited to his capacity.

"Section 9 (Subsection 33).   Question of fact arising in the administration of these regulations shall be determined conclusively for all parties by the committee."

On April 11, 1916, appellee accepted the benefits of the "Plan" in a writing designated "Acceptance of Benefits Under Plan," which he duly signed and acknowledged, and which was witnessed by two witnesses.   This writing, among other things, recites:

"Whereas, the undersigned has been injured while in the employ of the said Western Union Telegraph Company and has elected to accept the benefits of said Plan on the conditions provided thereby.

"Now, therefore, in consideration of the benefits of said Plan which I have read and with which I am familiar, a copy of which is attached hereto and made a part hereof and marked 'Exhibit A,' and for other good and valuable considerations, the receipt whereof is hereby acknowledged, I have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors and administrators, remise, release, and forever discharge the said Western Union Telegraph Company * * * of and from all manner of action and actions, cause and causes of action, suits, debts, damages, judgments, costs, claims and demands whatsoever, in law or in equity, which, against the said Western Un-

ion Telegraph Company, I ever had, now have, or which my. heirs, executors, or administrators' hereafter can, shall or may have, for, upon or by reason of anything which has heretofore occurred and particularly by reason of personal injuries sustained by me on or about the 10th day of February, 1916, at or near Calico Rock, in the State of Arkansas, while in the employ of the said telegraph comapany.''

Appellee instituted this action against the appellant. In his complaint he alleged his injury as above stated and averred that ever since executing the release he had been and was still unable to earn a livelihood, and that he would so continue for the full period of six years; that at the time of the injury he was earning the sum of $90 per month and that appellant had paid him the sum of $356.59, the amount due him under the Plan up to September 19, 1916, and had refused to make further payments. He set up the above contract, and alleged that the appellant had breached the same to his damage in the sum of $2,910, with interest, for which he prayed judgment. The appellant answered, admitting the allegation of the complaint as to the amount of wages that appellee had earned, and that appellant had paid him the sum of $356.59 in full of said benefits to September 17, 1916, and that it had not paid him anything since. The appellant denied specifically the other allegations of the complaint, and denied that the appellee was due any further sums under the Plan. Appellant also set up the Plan, and alleged that the administration of such Plan was imposed upon the "Employees' Benefit Fund Committee;" that this committee had investigated appellee's claim, and on May 8, 1916, found that appellee's disability was a total one and made an award in his favor of full pay for thirteen weeks and half pay thereafter as long as such disability should continue, not exceeding six years in all; that such benefits were paid to appellee for a period ending September 17, 1916; that on September 27, 1916, the committee investigated the facts relative to appellee's

disability and found that on September 17, 1916, such disability had ceased to be total, and that appellee was then able to earn a livelihood and directed that the claim be discontinued as of September 17, 1916; that appellant then ceased to make further payments under the Plan and had paid to appellee all sums to which he was entitled under the regulations governing the administration of said Plan by the committee. Appellant set up the acceptance of the Plan by the appellee and the release of the appellant thereunder by compliance as alleged with the terms of the contract on its part.

The appellee in reply denied the allegations of appellant's answer and alleged that if the committee made a finding that appellee's disabilities had ceased to be total on the 17th day of September, 1916, and that he was on said date able to earn a livelihood, such finding was without investigation as to the facts—was false and fraudulently made for the purpose of depriving appellee of the payments justly due him from the Benefit Fund. The appellant denied that the finding of the committee was made without investigation as to the facts, and also denied that it was falsely and fraudulently made to deprive appellee of the payments justly due from the Benefit Fund, but alleged that the report of the committee was in accordance with the facts.

The testimony on behalf of appellee was to the effect that he was in appellant's employ as a lineman and was injured while engaged at such work. After describing his injuries and the treatment given him for his injuries by the physician at the sanitarium and the effect of the injuries on his health and his general physical condition, he stated that he had not been able to earn a livelihood since receiving the injury and was not able to do so at the time of the trial. He stated that he executed the release containing the plan of settlement, but did not understand what the paper contained, but didn't repudiate it. He was receiving the sum of $90 per month at the time of his injury

and was paid something like $350 under the settlement. He stated he had been out of work a year. He then described the character of work that he had since been engaged in. He had managed a certain plumbing business from January 1, 1919, till October, 1919; got $12 a week. After that he worked at the plumbers' trade at $3.50 a day for the days he worked. Beginning about the middle of September, 1918, he worked for the light plant until June, 1919. He received $65 per month. He had a wife and five children. The children were from three to nineteen years old. He couldn't say whether his injuries were permanent or not; hoped that they were not. He went back to work for appellant the last of September, 1917, and worked about a month, and the appellant's foreman said he wasn't of any service and called him out.

Other witnesses on behalf of appellee testified as to his physical condition and the manner in which he performed his work while he was working at the light plant. Their testimony showed that his physical condition was not good and that he could not do his work effectively on that account.

Testimony on behalf of the appellant tended to show that its telegraph system covered the United States of America and the maritime provinces of Canada; that in 1916, at the time appellee was injured, appellant had 38,800 employees in its service and operated 1,505,849.24 miles of wire. It was not practicable for the committee administering the Plan to investigate personally all the claims that came before it. There had been presented to the committee about 7,900 claims for accident benefits and 14,700 claims for sick benefits since the inauguration of the Plan. It was the custom to have the facts regarding accidents furnished on printed blanks by the employee in charge of the work at the time the accident occurred. The nearest physician is usually called, and he fills out a certificate, and, where continued treatment is necessary, makes periodic reports to the committee.

Medical reports are examined by the company's medical director, whose opinion controls the action of the committee. Where the medical director is not satisfied with the reports of an attending physician, an examination by a physician or surgeon selected by the medical director is ordered, and the reports from the attending physician, the company's medical representative and the medical director are used in considering the merits of the case. The system adopted by the committee to obtain information on the merits of claims had been very satisfactory to the claimants and to the company. Appellee's claim for accident disability benefits was presented to the committee, and the committee made its investigation according to the methods above outlined. The committee ordered an examination of appellee by the company's physician, Dr. O. K. Judd, at Little Rock, who found symptoms of a nerve injury and indications of a fracture of the third metacarpal bone of the right hand. He referred the case to Dr. George Fletcher, a neurologist, who rendered a long written report. This report was to the effect that there was no permanent injury to the nervous system and no organic involvement. Appellant's division plant superintendent, after investigation, made a report recommending that payments to appellee under the Benefit Fund cease as of September 17, 1916. Up to that time appellee had received payments under the plan in the sum of $356.59, and in addition $170 had been paid for medicine and doctor's bills.

The appellee was not notified of the investigation and was given no opportunity to appear personally before the Benefit Fund Committee to present his claim. He testified that he was not given an opportunity to make a showing of his physical condition. An employee had the right to appeal from the decisions of the committee either directly to the committee itself, or indirectly through his superior in the line of organization, or, as commonly understood by all of the employees, to the president of the company. No such appeal was made

by the appellee. If this had been done, another examination would have been ordered, and, if the examiner's report warranted, the case would have been reopened and continued. That was the customary practice. After the committee had heard all the evidence presented to it in the above manner, it took action as follows: "Approved recommendation of the division plant superintendent at Dallas, that benefits in the case of C. N. Robertson, lineman, be discontinued as of September 17, 1916."

The appellant presented, among others, the following prayers for instructions: "No. 1. You are instructed to find for the defendant." The court refused this prayer, to which ruling the appellant duly excepted. "No. 5. You are instructed that, under the terms of said Plan, the said committee had the right to decide all questions of fact bearing upon the right of the plaintiff to share in said benefits, and its decision thereof made in good faith is binding upon the plaintiff, even though said committee honestly reached a wrong conclusion in regard to the merits of plaintiff's claim." The court, over the objection of appellant, added to this prayer between the words "faith" and "is" the following: "After full and fair investigation of the facts." The appellant objected to this modification of its prayer and duly excepted to the ruling of the court in modifying and giving the instruction as modified. Other prayers for instructions were granted and refused, but, in the view we have taken of the contract and the undisputed evidence, it is unnecessary to set them out. There was a judgment in favor of the appellee in the sum of $3,025.20, from which is this appeal.

The pleadings raised the issue as to whether the finding of the Employees' Benefit Fund Committee "was falsely and fraudulently made for the purpose of depriving appellee of payments justly due him from the Benefit Fund." The burden on this issue was upon the appellee. The "Plan for Employees' Pensions, Disability Benefits and Insurance," inaugurated by the appel-

lant and accepted by the appellee, constituted a written contract between the appellant and the appellee, which was free from fraud, based upon a valid consideration, and binding upon the appellant and the appellee. Mc-Lemore v. Western Union Telegraph Co., 171 Pac. (Ore.) 390. Section 9, subdivision 33, of the contract provides: "Questions of fact arising in the administration of these regulations shall be determined conclusively for all parties by the committee." As we view the record, there is no testimony to warrant the jury in finding that the report of the committee was false and fraudulently made. The court erred in submitting that issue to the jury. The court also erred in submitting to the jury the issue as to whether or not there was a full and fair investigation of the facts by the committee. The undisputed testimony shows that there was a full and fair investigation of the facts, and the finding of the committee in the absence of fraud under section 9, subdivision 33, supra, was binding upon the appellee. Under section 6, subdivision 6, of the regulations, under which the disbursements to the injured employees were made, it is provided: "If injury is of a permanent character, benefits will cease when the employee shall be declared by the committee to be able to earn a livelihood in an employment suited to his capacity." The appellee, after describing his injuries and their effect upon him, in answer to questions, stated that he didn't know whether they were permanent or not. He was asked if he had any reason to think that he would recover, and answered that he didn't know that he had a reason to, but thought he would recover and hoped that he would. The reports of the physicians who examined the appellee and of the company's foremen, under some of whom the appellee worked after his injury, tended to show that appellee's injuries were not permanent. Therefore, the committee, under section 6, above, was not called upon to declare, as a condition precedent to discontinuing the payment of benefits, that the appellee was able to earn a livelihood in an employ-

ment suited to his capacity. Since the undisputed evidence did not show that the appellee's injuries were permanent, it was in the power of the committee under section 9, *supra, to* pass upon the facts. And, finding that appellee's injuries were not permanent, it was within the province of the committee to order that the payment of benefits be discontinued without declaring that the appellee was able to earn a livelihood in an employment suited to his capacity. The determination of the committee is conclusive, even though it were mistaken as to the facts and erred in its judgment.

The Benefit Plan of the appellant was open to all of its employees on and after January 1, 1913, who were unable to work on account of accidental injuries received while in the performance of work for appellant. On account of the great number of employees and the numerous claims presented under the Plan, the appellant had adopted the only practical methods for investigating and laying before the administrative committee the facts for its determination. The customary methods were pursued in appellee's case. The regulations of the Plan were followed. These regulations did not require that the appellee be notified and that he be present when they were making the investigation. The fact that he was not notified by the committee that they were making the investigation and was not given the opportunity to personally protest against the findings of the committee was no evidence of fraud in such findings. Therefore, the court erred in submitting to the jury the issue as to whether or not the committee had made its report "in good faith after a full and fair investigation of the facts." The testimony as to the manner and methods of investigation was undisputed. It was therefore a matter of law as to whether the investigation was full and fair and the report made in good faith. The jury should not have been permitted to erect in their own minds different standards for making the investigation from that prescribed in the Plan which was accepted by the appellee and uniformly

followed by the appellant. This, under the instruction as modified, the jury could have done.

In *Clark* v. *New England Tel. & Tel. Co.*, 118 N. E. (Mass.) 348, a similar contract was under review. In that case the court said: ''The methods of investigation of claims and general principles followed by the committee in the performance of their duties must be fair and reasonable, but there is nothing in this record to disclose anything objectionable in this regard. * * * It is no ground for setting aside the finding of the committee merely because they reached honestly a wrong conclusion. * * *''

In the above case the court held that it was no evidence of bad faith ''that the committee relied entirely upon the report of the investigator and did not notify the plaintiff to appear before them and give him a hearing.'' That case is well reasoned and is an able and exhaustive review of the authorities. The case at bar, on the facts, can not be differentiated in principle from the doctrine of that case. The conclusion there reached was that ''there was no evidence of bad faith on the part of the committee.'' That conclusion is sound and is controlling here. It follows that the court erred in refusing appellant's prayer for instruction No. 1, and also in refusing to give appellant's prayer for instruction No. 5 without modification. For the errors indicated the judgment is reversed, and, inasmuch as the cause seems to have been fully developed, it will be dismissed.