## Jensen v. The Bell Telephone Company of Penna.

*Vanartsdalen & Biester,* for plaintiff.

*Bunting & Satterthwaite* and *Benjamin O. Frick,* for defendant.

BOYER, J., April 13, 1937.—This was an action brought to recover a balance of accidental death benefits alleged to be due plaintiff by reason of the accidental death of her husband while in the employ of defendant company, under the provisions of a plan for employes' death benefits. Upon the trial the jury rendered a verdict in favor of plaintiff

478

for $1,779.27, whereupon these motions were filed by defendant.

From the evidence in the case the following facts might reasonably have been found by the jury: On December 4, 1933, and continuously for many years prior thereto, Peter J. Jensen, the husband of Annie C. Jensen, plaintiff, had been an employe of the defendant company as a district line foreman. As such employe he was required, as a part of his duties, to drive an automobile around the territory of the district in which he was employed for the purpose of inspecting telephone lines. On December 4, 1933, while in the performance of his duties, he drove an automobile belonging to defendant company over a public road in Bucks County from the village of Wycombe toward the village of Rushland. The road over which he was driving was then under construction and was very rough and stony, resulting in the deflation of the front left tire of the car he was driving. He made preparation to repair or change the tire while the car stood partly off the road on its right-hand side. One George Jones later came along the road and found the car standing in that position and Peter J. Jensen lying in the road, dead. The body was on its back, extending outward into the road at right angles from the front wheel of the car. Other witnesses later came along and testified to substantially the same facts.

From the testimony of these witnesses the jury could find that there was a jack extended for its full length under the front axle with the base partly submerged in the ground or mud and the top of the jack not reaching the axle by two or more inches. The axle rested upon a heap of stones which raised the wheel high enough so that the deflated or soft tire barely touched the ground, the weight of the car resting on the heap of stones. From this evidence the jury could very logically find, in fact were almost forced to the obvious conclusion, that the car must have been lifted by hand high enough to insert the last supporting stone under the axle. It was obvious that the

jack could not have raised the axle to that height, inasmuch as the head of the jack did not reach to the axle. Coroner John J. Sweeney, a physician, was called to the scene, made a superficial examination of the body and had it removed to an undertaker's establishment, where he later made a more thorough examination.

Decedent had been an exceptionally large man, weighing 260 pounds and over. He had suffered somewhat from a condition referred to as "fatty degeneration of the heart", which was a more or less chronic or continuing condition. Notwithstanding this condition, he was active and able to do various kinds of physical labor about his home. His death was caused by acute dilatation of the heart, the immediate cause of which was overexertion in raising the car preparatory to repairing or changing the tire. There was no evidence to show that his employment required him to do any kind of automobile repair work or to change tires. The changing of this tire was in the furtherance of his duties in his employment, being an effort to save his employer time and expense by changing it himself. The death was caused by the unanticipated and unusual strain and effort put forth in changing the tire.

Defendant company had a so-called "Plan for Employees' Pensions, Disability Benefits and Death Benefits" which was adopted and put into effect on January 1, 1913, and continued thereafter. Under this plan, employes dying while in the employ of defendant company became entitled to certain benefits known as sickness death benefits at a certain fixed rate. It also provided for accident death benefits at a generally higher rate, being payable in the case of death "resulting from accidental injury, on or after January 1, 1913, arising out of and in the course of employment by the company." The "committee" of five appointed by the president and board of directors of defendant company was charged with the administration of the plan according to its terms. Amongst the duties of the committee were the following:

"It shall determine conclusively for all parties all questions arising in the administration of the plan.

"It shall adopt such by-laws and rules of procedure as it may find necessary, with the approval of the President subject to the provisions of Section 9 of these regulations."

The committee appointed to administer the plan consisted of officers of defendant company and the company's solicitor. Section 5, providing for accident disability benefits, in subsection 5, provides in part:

". . . there must be a clear and well-established history of the cause and circumstances of the injury accidentally inflicted, and they must be sufficient to produce the alleged injury."

There is no such provision in the plan with relation to accident death benefits, but only as to disability benefits.

The committee met on December 21, 1933, when the secretary for the committee presented the case of Peter J. Jensen "for approval to authorize the full [sickness] death benefits of $3,547.32." At the time the recommendation for such benefits was submitted for approval the secretary also submitted a copy of the coroner's certificate of death filed with the Bureau of Vital Statistics at Harrisburg, setting forth the cause of death as "acute dilatation of heart. Fatty degeneration of heart." The approval was made, by motion duly adopted, and payment of $3,547.32 sickness death benefits was directed to be made to plaintiff.

A few days later Mr. Darlington, a representative of defendant company, called on plaintiff and orally informed her of the action of the committee, handing her a small piece of yellow paper with pencil notations thereon showing the total amount, amounts paid on account and balance. At the time he presented the paper, he and plaintiff discussed the manner of Mr. Jensen's death, Mr. Darlington saying that there were stones under the car and that it looked as though decedent got down to lift the car up on the jack. He also informed her that decedent

had died a natural death. On account of this latter statement she accepted the payments.

On June 15, 1934, the coroner filed a supplemental affidavit with the bureau in the nature of an amendment of his certificate, setting forth that death was caused by "acute dilatation of heart, fatty degeneration of heart; over-taxed while lifting front part of automobile to repair tire." Defendant received information of this amendment through a letter from plaintiff's counsel on about December 3, 1934. In this letter plaintiff's counsel called defendant's attention to the error in their award of benefits for natural death, asking for further investigation and informing them that he was filing a claim with the Workmen's Compensation Board as a matter of precaution inasmuch as the time for filing the same would expire within a few days. Defendant answered this letter by promising to investigate the matter further.

At the first meeting six or seven other cases were heard. No report other than the coroner's certificate and the recommendation was submitted to, or considered by it. No witnesses were heard, no reports received or investigation made. The award was made as a mere matter of form without any investigation by the committee and without their considering the possibility of an accidental death. No notice was given to plaintiff of the holding of the meeting. Neither was she consulted or requested to appear or produce any evidence or information. The recommendation had merely been made by one of the field departments of the company, which had secured the written statement of George Jones, one of the witnesses at this trial; but his statement was not submitted to the committee. This statement would have been sufficient to indicate that decedent had been changing a tire and that he had collected some stones for the purpose of raising the car. It also set forth that the witness had heard the coroner state that "in his opinion the man died from overexertion." The coroner was not called before the committee, nor was he interviewed by any investigator for the

committee. The committee never held any further meetings on this case, even after receiving notice of the coroner's amended certificate, and after defendant's letter of December 3, 1934, in which it promised to make further investigation.

The committee never adopted any rules of procedure as required by the plan. Defendant never gave plaintiff or her counsel any instructions what to do or how to proceed if she believed a mistake had been made or if she was dissatisfied with the award. The committee as such never reviewed its action in any formal manner.

Plaintiff, as a matter of precaution, filed a petition with the Workmen's Compensation Board a few days before the expiration of the time for filing the same. Her counsel then wrote to defendant and explained why he had filed the claim. Thereafter plaintiff's counsel, believing that the Workmen's Compensation Board had no jurisdiction under the circumstances, withdrew his petition. The proceeding was "therefore" marked "dismissed".

The defendant company paid plaintiff the amount of sickness death benefits in instalments by check. Each check had a printed statement on the face of it setting forth at length, in fine print, what the payment was for. This statement began with the words, "Monthly instalment of death benefits", etc. The last check was identical in form, excepting that the first words were "Balance of death benefits," etc. Plaintiff did not notice this difference in the wording of the checks and did not know that the last check was stated to be a balance or that it was intended as a final settlement and release of all claims when she had it cashed.

Upon the trial the court instructed the jury in substance that they must find for defendant unless it, or its committee, had acted in bad faith in passing upon and disposing of this claim; that if the committee had failed to adopt rules of procedure, as provided in the plan, then they were held to the highest degree of good faith and required to safeguard plaintiff's interest as well as their

own, and to afford her every reasonable opportunity to have any error in the award corrected. The court also instructed them that before plaintiff could recover she must prove by the weight of the evidence that her husband had suffered accidental death while in the course of his employment. It also instructed them that the proceedings instituted before the Workmen's Compensation Board did not preclude her from bringing this suit, and that the last check stating that the amount thereof was the balance due her was not necessarily a release barring her from all further claim.

On the foregoing facts, which the jury could reasonably find from the evidence, defendant asks for judgment n. o. v. It bases its motion on two main contentions: first, that the evidence is not sufficient to sustain a finding of accidental death; and, second, that the findings of the committee of natural death are conclusive upon plaintiff and bar her from the right to sue. The second contention involves several subsidiary questions, namely, whether the so-called plan was a contract between defendant and its employes giving the employes standing in law to enforce its provisions, or whether it was a mere gratuity, payable at the pleasure of defendant company; whether there are any exceptions to the provision that the committee shall conclusively determine all questions arising under the plan; and whether the evidence shows that the actions and investigations of the committee in administering the plan were unfair, an abuse of discretion, or fraudulent.

Considering the first question involved, we are of the opinion that the evidence was sufficient to sustain the finding of accidental death in the course of employment. That death resulted from dilation of the heart resulting from overexertion is supported by expert medical testimony. While there might be room for differences of opinion as to the correctness of the jury's conclusion, it was the function of this jury to determine all disputed questions of fact. Whether the deceased had been subject to

unusual strain or overexertion was also a question of fact for the jury, which they could determine from rather clear, circumstantial evidence. It was not a question of basing a presumption on a presumption, as in Carroll v. Willow Brook Co. et al., 108 Pa. Superior Ct. 580, relied on by defendant. That was rather a presumption based on a conjecture. The deceased was supposed to have attempted to lift a large beam out of a hole in the ground, but there was no evidence of that fact other than that he was supposed or expected to do so. On that supposition it was again presumed that the overexertion had caused his death. In this case there is positive evidence, though circumstantial, from which the jury could find that decedent actually lifted the car and then dropped over dead. At the most this could be said to be an inference upon an inference, which has been held to be entirely different from a presumption based on a presumption and not to be objectionable. This distinction is pointed out in the recent cases of Neely et al. v. The Provident Life & Accident Ins. Co., 322 Pa. 417, and Reed v. Horn's Motor Express, Inc., 123 Pa. Superior Ct. 411 (1936).

Defendant further contends that the changing of the tire and lifting the car was not an unusual exertion or an accident, and cites in support of his contention a long line of cases, all of which are cases of laborers whose usual and ordinary duties were manual labor including great physical effort and severe strain. This case in our opinion comes within the other line of cases of employes who did not have occupations requiring severe physical strain, but where such strain was in their occupation unusual and out of the ordinary. This line of decisions is supported by two very recent cases which were decided on December 11, 1936, namely, Hill v. Thomas S. Gassner Co. et al., 124 Pa. Superior Ct. 217, and Beck v. Ashton et al., 124 Pa. Superior Ct. 307. In the former case, as in this, decedent had been suffering from a chronic heart ailment. He had trouble with the engine of his employer's automobile, which he had been driving. He was

seen trying to push the car up a grade and soon there-
after fell over backwards and died. The Superior Court
in its opinion discusses the law on this subject and points
out the distinction between those cases where death oc-
curred "in the discharge of usual duties, in a normal
manner, without exceptional effort", and those cases in
which death had been preceded by overexertion in per-
forming some unusual duty. In the second case decedent
was a sales manager and supervisor of a milk plant. He
operated a car belonging to his employer. He telephoned
for assistance to fix the car. When the assistant arrived
he found deceased lying beside the car, dead, with tools
scattered around, indicating he had been working on the
car. The court in its opinion cites numerous cases of em-
ployes who were not employed as garage mechanics, but
were killed as a result of working about the employer's
car out of the ordinary line of duty.

We do not find any reason to hold that the measure of
proof, or the meaning of accidental death, as referred to
in the plan, is any different from those terms as under-
stood in the law relating to workmen's compensation. The
paragraph above quoted as to "a clear and well estab-
lished history of the cause and circumstances of the in-
jury accidentally inflicted" is a part of, and used only in
connection with, a section relating to disability benefits
but not to accident death benefits.

At the trial, defense counsel contended that the plan
set up by defendant company for the payment of death
and disability benefits without contribution from the
employes was a mere gratuity, and that consequently an
employe had no legal standing to demand or sue for such
benefits, or to complain as to the manner of awarding
them. It is only fair to the officers of the company to
assume that such was their view in administering the
plan. Otherwise it would be very difficult to account for
their very casual, indifferent and unjudicial manner of
passing upon the claims. This contention was not pressed
at argument nor in defense counsel's brief, but it ap-

peared to be tacitly admitted that such a plan consti-
tutes a legal contract between the employer and employe,
enforcible at law. While such plans do not seem to have
been passed upon by the courts of this State, there is au-
thority in other States for holding that such a plan con-
stitutes a contract and is not a mere gratuity.

"A benefit plan offered by an employer to all its em-
ployees and impliedly accepted by them through remain-
ing in the employment constitutes a contract between the
employer and employee, the service rendered by the em-
ployee being a sufficient consideration to support the em-
ployer's promise to pay benefits": 39 C. J. 248, sec. 363;
Western Union Tel. Co. v. Robertson, 146 Ark. 406, 225
S. W. 649; McLemore v. Western Union Tel. Co., 88 Ore.
228, 171 Pac. 390, 1049; Clark, Admr., v. New England
Tel. & Tel. Co., 229 Mass. 1, 118 N. E. 348.

The case of Clark, Admr., v. New England Tel. & Tel.
Co., supra, appears to be most nearly parallel to the case
at bar. This case holds that it is within the employer's
power to provide in the plan that the determination of
the committee shall be conclusive, provided that the action
of the committee and its investigations were full, fair, and
made in good faith. It also holds that where the manner
and method of the investigation and the conduct of the
committee is undisputed, its good faith is a question of
law for the court. The committee's determination is con-
clusive, even though it may be mistaken in its findings of
facts and err in its judgment, provided it always acted
honestly and in good faith. The fact that employes con-
stituting the committee were also stockholders and heads
of departments does not disqualify them. The failure to
request claimant to appear before the committee and to
give him a hearing does not alone show bad faith. The
case of Western Union Tel. Co. v. Robertson, supra, is
also in accord with these rulings. For the purposes of this
case, and in the absence of any decisions by our own courts
to the contrary, we will assume the principles as laid down
in those cases to be correct. However, in neither of these

cases was there a provision in the plan that the committee "shall" adopt rules of procedure as the committee may find necessary. Our courts have passed upon analogous questions in cases of beneficial associations, holding that the courts will exercise supervision to enforce an honest and just administration of the rules of the organization, but not to interfere when they are administered in good faith and in a proper and legal manner: Maloney v. United Mine Workers of America et al., 308 Pa. 251; Cimprich v. Pennsylvania R. R. Co., 119 Pa. Superior Ct. 5.

With these principles in mind we must examine the conduct of the committee to ascertain whether it at all times acted honestly, justly and in good faith as required under the circumstances of the case. In the first place, the plan provided that the committee "shall adopt such by-laws and rules of procedure as it may find necessary." It was admitted that the committee had adopted bylaws, which were offered in evidence, but had not adopted any rules of procedure whatever. The bylaws related solely to the organization of the committee, the holding of meetings, etc., but made no reference whatsoever to any procedure for the presenting or prosecuting of a claim before the committee or for the protection of claimants' rights in any manner whatsoever. The language of the provision is mandatory in form and, in reason and justice, should be construed as mandatory. It provides that the committee "shall" adopt rules of procedure. The subsequent phrase, "as it may find necessary" relates to the type and substance of the rules and certainly not to the whim of the committee in deciding whether it will adopt rules. Without such rules every claimant is absolutely at the mercy of the company and wholly without remedy for any injustice or fraud committed. As in this case, it permits the committee to hold secret sessions, to exclude claimant from attending all hearings, and to preclude the presentation of any facts or evidence which claimant may have. It also prevents a claimant from doing anything

whatsoever to correct any fraud, accident or mistake on the part of the committee. Such possibilities should in all honesty have been provided against by the adoption of reasonable rules of procedure which would safeguard claimant as well as the company. In the opinion of the court this apparently deliberate failure to comply with the plan was in itself such bad faith as would prevent the decision of the committee from becoming conclusive, and the court might well have given the jury binding instructions to that effect.

In view of the failure to provide rules of procedure, we are of the opinion that it was unjust and bad faith on the part of the officers of defendant company to serve on this committee. It was equivalent to the company's naming itself as the tribunal to conclusively determine its own liability on claims under the plan. To permit a company to manipulate a plan in such a manner as to make itself the judge of its own liability and at the same time preclude claimant from having a hearing is so dangerous and grossly unjust as to shock judicial conscience.

In the third place, the undisputed testimony as to the procedure and deliberations of the committee in this particular case shows a gross lack of care and judicial discretion. The so-called hearing was a mere formality. It involved no consideration of facts and evidence, no inquiry, discussion or deliberation, but a mere perfunctory motion based on a recommendation from a territorial department of the company without any report. The nearest approach to evidence offered was the production of a coroner's certificate, which neither asserted nor negatived accidental death. The secretary had in his files, but did not produce at the "hearing", a written statement of an eye witness which indicated that a doctor had attributed the death to accidental cause. This statement was not produced or read to the committee. This apparently reckless disposition of an important case can only be attributed to the committee's being under the misapprehension that these

benefits were a mere gratuity to be given or withheld at pleasure.

There is further evidence, although this may not be as clear, that, after the committee's attention had been called to a supposed error in its finding that the death was a natural one, and after it had been notified that the coroner's certificate on which it had partly based its original findings had been corrected and amended, it, as a committee, never reviewed the case or gave it any further official consideration. This, in our opinion, was also bad faith and constructive fraud upon its part. All of these acts and omissions on the part of the committee furnished ample grounds for the finding of the jury that the committee had not acted justly and in good faith towards claimant. Practically none of these facts were in dispute, and the court might have given binding instructions to the effect that, as a matter of law, the award of the committee was not conclusive and final: Western Union Tel. Co. v. Robertson, supra.

Defendant further answers plaintiff's contention by the well-known rule that a member of a beneficial association must exhaust his remedy within the association before resorting to a court of law. Defendant's contention that claimant should have asked for a second hearing before bringing suit comes in very poor grace in view of the fact that claimant was never allowed a first hearing, or any hearing or trial at all worthy of that name. In Cimprich v. Pennsylvania R. R. Co., supra, cited by defendant on this proposition, the regulations or rules of procedure of the association provided definite and rather elaborate procedure for an original hearing, and for an appeal to an advisory committee, and for the taking of evidence and hearing argument on such appeal. Had this defendant made any such provision by rules of procedure, and had claimant failed to pursue them, the objection would be well taken.

Defendant also contends that the question of want of good faith on the part of the company or its committee

should not have been submitted to the jury because it was not pleaded by plaintiff. It is true that plaintiff did not specifically plead this general want of good faith, abuse of discretion, etc., although there were charges of fraudulent statements alleged to have been made by particular representatives of the company. It is sufficient to say that defendant pleaded as a defense against the claim the action of the committee and the conclusiveness of its findings under the plan. This was only a qualified defense, because that answer involved the allegation of good faith. When defendant set up the action of its committee it should have pleaded it as new matter and have thereby compelled plaintiff to answer. Had plaintiff then failed to overcome the answer by averring bad faith, etc., it might have been precluded from showing it. As the pleadings stand, we feel that the question of good faith on the part of the committee is so inextricably tied up and interwoven with the action and award of the committee that they cannot be separated. This question was properly for the jury under the pleadings as filed. If there is any question about it, the statement of claim can be, and will be, treated as amended, the case having been tried throughout on the issue of the validity of the action of the committee. In Pittsburgh-Texas Gas & Oil Co. v. Adams et al., 79 Pa. Superior Ct. 511, the court held:

"An amendment of the plaintiff's statement after verdict, and while motions for new trial and judgment non obstante veredicto were pending, was properly allowed, where the amendments did not go outside the case as it was tried, and the defendant could not have been misled thereby."

In Borough of North Catasauqua v. Thomas, 95 Pa. Superior Ct. 546, 550, the court said, in part: ". . . and as the proof was that all the owners . . . received notice . . . we shall now consider the record so amended to accord with the evidence".

A large part of the trial was devoted to the issue of want of good faith and, as there was little dispute as to the facts

and ample evidence to support the findings, we may well consider the pleadings as so amended if essential. See Theisen v. Pittsburgh Rys. Co., 256 Pa. 475, 481, in which it was said:

"It would be a blemish upon the law if such formal amendment could not be made without the necessity of granting a new trial. The amendment did not go outside of the case as it was tried; and any time before final judgment the ad damnum clause, may, in the discretion of the trial court, be increased so as to embrace the case as actually tried."

Another question raised by defendant's motion is whether the record of the Workmen's Compensation Bureau made this question res judicata. We are of opinion that it did not. Counsel was employed by plaintiff a few days before the expiration of the time for filing a petition with the Workmen's Compensation Board. He immediately filed such a petition as a precaution and wrote to defendant what he had done and his reason. Subsequently he satisfied himself that the compensation board did not have jurisdiction and withdrew his petition. The referee made an entry to that effect and then added, in our opinion erroneously, "the claim petition is, therefore, dismissed". Defendant cites no authority to the effect that the institution of proceedings in the wrong forum precludes subsequent proceedings in the proper court. It is apparent that the referee, when stating that the petition was "therefore" dismissed, referred to the fact of the withdrawal of the petition. It cannot be taken as an adverse decision on the merits.

The last contention of defendant is that the acceptance of the last check to plaintiff for the final payment of the amount originally awarded to her amounted to a release by way of accord and satisfaction. It cites in support of that contention the case of Barron Co. v. Fox & Co., 84 Pa. Superior Ct. 46. That case in itself is a sufficient answer to the argument. The court there said, at page 50:

"It is necessary that the money be offered in satisfaction of the account, and that the offer be accompanied with such a declaration as is equivalent to a condition that if the payment is accepted, it shall be in satisfaction. The same doctrine is stated in Dimmick v. Banning, 256 Pa. 295, wherein it was held 'that to establish accord and satisfaction, payment should be offered in full satisfaction of the demand and be accompanied by acts and declarations amounting to express notice that the payment is conditional and if accepted must be received in full satisfaction of the claim.' Danish Pride Milk Co. v. Marcus, 272 Pa. 343, is to the same effect."

And at page 51:

"The exact language of notice to be given by the payor to the payee is not prescribed in the law. The acts and declarations of the payer must have the effect of express notice that the acceptance of the check will be in satisfaction of the claim and that is the result produced by the defendant's payment and the plaintiff's acceptance."

This check was not accompanied by any letter or other communication relating to the check. The only possible notice to plaintiff was a very slight alteration in the usual printed portion of the check, changing two words of a rather lengthy paragraph. She testified that she did not notice any difference between this and the previous checks. The court properly left the truth of this statement to the jury.

Now, April 13, 1937, the motion for judgment n. o. v. is dismissed and the motion for a new trial is dismissed and new trial refused.