**CHAPA v. REID et al.**

No. 12384.

Court of Civil Appeals of Texas.
San Antonio.

March 19, 1952.

Rehearing Denied April 16, 1952.

George F. Manning, Roderic T. Wriston and Arnold & Cozby, San Antonio, for appellant.

Harry A. Nass, E. G. Bradley and Chas. H. Jackson, Jr., San Antonio, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Felix A. Chapa, Jr., against W. R. Reid, Ralph L. Eiser and Eiser Construction Company seeking a declaratory judgment construing a certain written contract entered into on the 15th day of June 1950 by Chapa and Reid. Ralph Eiser Construction Company and Ralph Eiser are asserting certain interests in the subject matter of the contract which are contrary to the rights asserted by Chapa. The trial began to a jury but at the close of plaintiff's evidence, both parties having moved for an instructed verdict, the court instructed the jury to return a verdict in favor of defendants. Felix A. Chapa is prosecuting this appeal.

The evidence shows that prior to June 15, 1950 appellant Chapa had certain optional right under a contract relating to a subdivision known as Brentwood Village located near the City of San Antonio in Bexar County, Texas. This option would expire unless the sum of $10,000 was paid on or before 12:00 o'clock noon Saturday, June 17, 1950 and unless an earnest money contract for the purchase of Brentwood Village subdivision was entered into by some responsible person on or before such time agreeing to pay a total consideration for the subdivision of $76,000 of which the $10,000 was to be a part.

On June 15, 1950, appellee Reid and appellant Chapa entered in a contract which is the subject matter of this suit. By the terms of this contract Reid agreed among other things to enter into an earnest money contract for the purchase of Brentwood Village Addition for the total consideration of $76,000 and to pay the $10,000 earnest money.

Reid further agreed as follows:

"1. That said property is to be deeded outright to him and that First Party is to have no further right, title or interest in or to such property.

"2. That he will forthwith thereafter improve such Subdivision by installing asphalt top streets, sewers, water and all utilities in such entire Subdivision so that each lot therein will have such water and other utilities in the street in front of each of such lots, or in such manner so that such utilities will be available for such lot; it being understood that delays are excusable when the material is unavailable.

"3. That he will within forty (40) days from the date hereof pay for the benefit of First Party to the parties hereinafter named the sum of Thirteen Thousand Dollars ($13,000.00) in cash, as follows: Walter C. Wolff, Attorney at Law, San Antonio, Texas, Twenty-two Hundred and Fifty Dollars ($2250.00); Charles J. Lieck, Attorney at Law, San Antonio, Texas, Twenty-two Hundred Fifty Dollars ($2250.00); Frank J. Baskin, Attorney at Law, San Antonio, Texas, Twenty-five Hundred Dollars ($2500.00), and the balance of said sum in cash to First Party;

"4. That he will as soon as such land is improved, as hereinabove stated, convey to First Party, or to any person designated by First Party, said lots as so improved for a consideration of Seven Hundred Dollars ($700.00) per lot each by delivering general warranty deeds and guaranty title issued by the Stewart Title Guaranty Co., of San Antonio, to the purchaser of each of said lots, it being understood, however, that First Party, or the persons he designates, is to purchase not less than thirty (30) such lots each calendar month after such lots have been improved, it being understood, however, that such persons may make proper credit arrangements satisfactory to the said Second Party. It is further understood and agreed that all moneys thus paid for such property shall be paid to the Stewart Title Guaranty Co., as escrow agent, it being understood and agreed between the parties hereto that such lots may be sold for more than Seven Hundred Dollars ($700.00) by First Party, and in such event First Party is to have as his own all moneys over and above Seven Hundred Dollars ($700.00) paid for each of such lots as so sold.

"5. It is further understood that he will pay all taxes, delinquent and current, but that in such event the taxes so paid shall be added to the amount he is to receive on the sale of such lots.

"6. It is understood that this contract constitutes our entire agreement and no other promises, expressed or implied, have been made which are not contained herein."

The contract contains an addendum in the following language:

"The following is an added clause of the foregoing agreement being made simultaneously with the said agreement and being signed by the parties simultaneously and being a part of said agreement in its entirety:

"It is understood and agreed that First Party will start selling such improved lots as the Subdivision is being improved, said selling period to commence not later than sixty (60) days after the start of such improvement program."

Reid through his agent R. L. Eiser notified appellant by letter dated August 9, 1950 that the improvement program had been started on August 7, 1950 and that he should begin selling the lots not later than 60 days thereafter. On February 8, 1951, Reid notified appellant by letter that because he had failed to fulfill and perform his obligations and duties under his option agreement dated June 15, 1950, he had forfeited his rights under the contract.

Appellant and appellees place different constructions upon the contract and the question here to be decided is which construction is correct. Appellees contend in effect it was appellant's duty to start selling at least 30 lots per calendar month within 60 days after appellees had started the im-

provement program provided for in numbered paragraph 2 of the contract hereinafter referred to as paragraph 2. Appellant contends that he was not required to start selling the lots until they were improved as is provided for in paragraph 2.

It seems from the evidence that on February 8, 1951, when appellees notified appellant that he had forfeited all of his rights under the contract there were no lots in Brentwood Village that had been fully developed as was provided for in paragraph 2 of the contract. At least the record fails to affirmatively establish that there were such improved lots on that date. Appellees were required among other things "to forthwith * * * improve such Subdivision by installing * * * all utilities * * * so that each lot therein will have such water and other utilities in the street in front of each such lots, or in such manner so that such utilities will be available for such lots." Appellees had done nothing to bring electric lines and gas mains into the subdivision. They had not dedicated the alleys to the public or made the necessary deposit with the Public Service Board, both of which acts were a prerequisite to securing such utilities. Electric lines and gas mains were on Cupples Road and some 13 lots of Brentwood Village front on this road, but it appears that appellant was not entitled to sell these 13 lots.

Except for the addendum the contract could easily be construed as providing that appellant was not required to begin his selling program until each and every one of the 383 lots in Brentwood Village had been improved as provided for in paragraph 2. The following language found in the main body of the contract suggests such an interpretation:

"4. That he (Reid) will as soon as such land is *improved, as hereinabove stated* convey to First Party (Chapa) * * * said lots *as so improved* * * First Party is to purchase not less than thirty (30) *such lots* each calendar month after *such lots have been improved* * * *."

This brings us to a determination of the meaning of the addendum.

■■ It provides that "First Party will start selling *such improved lots* as the subdivision *is being improved,* said selling period to commence not later than sixty (60) days *after the start of such improvement* program." (All emphasis is ours unless otherwise stated.) This language when construed in connection with the language contained in the body of the contract means that after the improvement program had begun and continued for 60 days appellant must begin to sell such lots as are fully improved as provided in paragraph 2, and that appellant could not wait until all 383 lots in Brentwood were fully improved before he began his selling program. This is the only interpretation that will give meaning to all of the provisions of the contract and harmonize all apparent conflicts as we are required to do if possible in interpreting a contract. In Tex.Jur. p. 282 (Contracts) Sec. 164 the rule is stated truly:

"The intention of the parties to a contract is to be gathered from a consideration of the entire instrument, taken by its four corners. In other words, the contract must be read, considered and construed as a whole, and all of its provisions must be taken into consideration and construed together in order to ascertain its meaning and effect.

"Ordinarily it is not proper to consider a single paragraph or clause by itself in order to ascertain its meaning. Each clause or paragraph must be construed with reference to every other paragraph and the effect of one paragraph upon the other determined. A presumption at variance with the effect of the other provisions of a contract will not be raised upon a single one of its provisions; and a purpose which is necessarily inferred from the language of a particular clause, when considered alone, is not controlling where it is expressly negatived by a subsequent clause. But the intent of the parties with respect to a particular matter is to be gathered wholly from a particular paragraph where it alone refers to the matter and the other provisions refer wholly to different matters.

"It is to be presumed that every provision of a contract was incorporated for a purpose. The court has no right to nullify any of its terms, and, if possible a construction will be adopted which gives effect to each and every part of the instrument, in preference to one which would render any of the provisions therein meaningless."

If we should adopt the construction contended for by appellees to the effect that appellant was required to begin selling *unimproved* lots 60 days after the development program had begun we would do violence to the language of the addendum itself wherein it is provided in effect that appellant is only required to sell *improved* lots to say nothing of the many provisions contained in the body of the contract relating to the sale of improved lots.

The trial court erred in instructing the jury to return a verdict for appellees and accordingly the judgment is reversed and the cause remanded.

Reversed and remanded