**NEUHOFF BROTHERS PACKERS MAN-
AGEMENT CORPORATION
et al., Petitioner,**

v.

**Joe S. WILSON, Jr., Respondent.**

No. B–1681.

Supreme Court of Texas.

Feb. 25, 1970.

Rehearing Denied March 25, 1970.

Lyne, Klein & French, Fritz L. Lyne and Erich F. Klein, Jr., Dallas, for petitioner.

Jackson, Walker, Winstead, Cantwell & Miller, D. L. Case and Jack Pew, Jr., Dallas, Forrester Hancock, Waxahachie, for respondent.

HAMILTON, Justice.

Plaintiff-respondent, Joe S. Wilson, brought this suit against defendant Neuhoff Bros. Packers (which is not a party in this appeal) and against defendants-petitioners Neuhoff Bros. Packers Management Corp. and Republic National Bank of

Dallas (trustee), to recover $16,256.18 which plaintiff claimed under a profit sharing plan maintained by his former employer, Neuhoff Bros. Packers. Defendants answered that the $16,256.18 had been forfeited because the committee which managed the profit sharing plan had in good faith determined that plaintiff was discharged for dishonesty and that under the terms governing the profit sharing plan such a determination by the committee was conclusive. The trial court jury found that plaintiff was not guilty of dishonesty and that the committee did not act in good faith. The trial court granted defendants' motion for judgment notwithstanding the jury verdict. The Court of Civil Appeals affirmed the trial court's judgment in favor of defendant Neuhoff Bros. Packers but reversed the trial court's judgment as to defendants-petitioners Neuhoff Bros. Packers Management Corp. and Republic National Bank of Dallas (trustee) and rendered judgment for plaintiff for $16,256.18 with interest. 442 S.W.2d 470. We reverse the judgment of the Court of Civil Appeals as to the Management Corp. and the trustee Bank.

Before January 24, 1966, plaintiff had been employed by Neuhoff Bros. Packers for twelve years. Plaintiff was a cattle buyer for Neuhoff and was paid a regular salary plus traveling expenses for attending auction sales. Plaintiff was obligated to Neuhoff to buy cattle at the *lowest* possible price. Conversely, the auction barns represented the owners of the cattle being sold and, therefore, were obligated to obtain the *highest* possible price. The auction barns received a commission from the owners of the cattle being sold. Obviously, Neuhoff's financial interests were directly opposed to the interests of the auction barns.

One of plaintiff's regular duties as a buyer for Neuhoff was to attend the weekly cattle sale at the Leggott Livestock Auction Barn in Waco, Texas. In 1964 plaintiff began receiving approximately $25.00 per week from the Leggott Auction Barn which he attended one day each week.

Until January, 1966, Neuhoff had no knowledge that plaintiff was receiving these weekly payments. Plaintiff was discharged on January 24, 1966, solely for having accepted these payments. Following his discharge plaintiff requested payment for his share ($16,256.18) under the Neuhoff profit sharing plan.

The instrument governing the profit sharing plan provides:

"If the participant's employment has been terminated by reason of dishonest or fraudulent conduct he shall forfeit the entire amount of his account.

\* \* \* \* \* \*

"*Section 1—Appointment of Committee*: The Company shall appoint a committee of at least three (3) members. . . . The committee shall have complete control of the administration of the plan.

\* \* \* \* \* \*

"*Section 2—Majority Action*: Action taken by a majority of the members of the committee shall be binding upon the employee and his beneficiaries.

"*Section 3—Powers of the Committee:* The committee shall have the following powers:

\* \* \* \* \* \*

"(b) To construe all terms, provisions, conditions and limitations of the plan, and its construction thereof made in good faith shall be final and conclusive on all parties at interest.

\* \* \* \* \* \*

"(g) To make all determinations and computations concerning the benefits, credits, and debits to which any participant or other beneficiary is entitled under the formula of the plan.

"(h) To determine all questions relating to the administration of the plan and trust (1) when differences of opinion arise between the company, the trustee, a participant, or any of them. \* \* \*

\*　\*　\*　\*　\*　\*

"The foregoing list of express powers is not intended to be either complete or conclusive, but the committee shall, in addition, have such powers as it may reasonably determine to be necessary to the performance of its duties under the plan and the trust agreement. Except as otherwise specifically provided herein the decision or judgment of the committee on any question arising hereunder in connection with the exercise of any of its powers shall be final, binding and conclusive upon all parties concerned."

Contributions to the profit sharing plan are made solely by Neuhoff Bros. Packers.

Upon receipt of plaintiff's request for payment of the $16,256.18, two of the three members of the committee decided that legal advice should be sought.

The attorney's opinion, in part, was as follows:

"The word 'dishonesty' has a broader connotation than 'fraudulent' and is generally defined to include 'not being trustworthy.' In our opinion the admitted course of conduct on the part of such employee is at least within the meaning and intention of 'dishonesty' as used in such Plan and requires the forfeiture of his account thereunder."

Joe O. Neuhoff, a member of the committee, testified that after he received the attorney's opinion, he showed the opinion to another member of the committee and that the two of them decided that plaintiff was not entitled to any share under the profit sharing plan. Joe O. Neuhoff then wrote the following letter to plaintiff:

"Enclosed is our attorney's opinion with regard to your participation in the Profit Sharing Plan.

"The opinion is very clear, in that *according to the provisions of the Plan*, the Committee has no choice in the matter but to deny your request." [Emphasis added].

Joe O. Neuhoff further testified that after the committee asked for and received the attorney's opinion, the committee felt that it had no choice but to deny plaintiff's request. Joe O. Neuhoff also testified that the basis for the committee's denial of plaintiff's request was the attorney's opinion and the statements set forth therein. The committee did not hold a hearing for plaintiff on the matter of the profit sharing funds; there is no evidence that plaintiff requested such a hearing. However, prior to plaintiff's discharge Joe O. Neuhoff did meet with plaintiff to discuss the matter of discharge. Joe O. Neuhoff testified that at this meeting plaintiff admitted the payoff arrangement with the Leggott Livestock Auction Barn and admitted that such an arrangement was wrong; however, plaintiff denies making the latter admission.

It is undisputed that the previously quoted provisions in the instrument governing the profit sharing plan delegate to the committee the power to determine whether or not plaintiff's conduct constituted dishonesty. Defendants contend that the committee's determination is *final and conclusive* and not subject to attack in the courts in the absence of a showing of a lack of good faith on the part of the committee. Plaintiff does not question this contention. It is the "lack of good faith" upon which plaintiff relies.

To show the committee's lack of good faith, plaintiff first argues that the "committee's" decision that plaintiff's acts constituted dishonesty was the decision of the attorney and not the decision of the committee. Plaintiff relies upon the testimony of Joe O. Neuhoff, the written opinion of the attorney and the letter written by Joe O. Neuhoff to plaintiff. Secondly, plaintiff argues that the committee's failure to hold a hearing for plaintiff was evidence of a lack of good faith.

█ Having reviewed the "lack of good faith" evidence relied upon by plaintiff, we hold that there is no evidence that the committee failed to act in good faith. The

committee's consultation with an attorney is not evidence of bad faith; on the contrary, it was a wise and cautious procedure. Having received the attorney's opinion, the committee then had a choice—either to disagree with the attorney's opinion or to agree with it and refuse plaintiff's request for the $16,256.18. The committee chose the latter alternative; nevertheless, it was the decision of the committee which ultimately determined that plaintiff was guilty of dishonesty.

Joe O. Neuhoff testified as follows:

"Q. Did you discuss * * * [your attorney's opinion] with any other member of your committee prior to writing to Mr. Wilson [plaintiff]?

"A. Yes, I showed the opinion to my brother Henry [who was a member of the committee].

"Q. And did you reach a conclusion between the two of you as to what you should do?

"A. We did.

"Q. And what was that decision?

"A. * * * that Joe Wilson did not have any share coming out of the Profit Sharing Plan."

Having found dishonesty, the committee then had no choice but to deny plaintiff's request for payment because the governing instrument clearly forbids payment to an employee who has been discharged by reason of dishonest conduct.

Regarding the committee's failure to hold a hearing for plaintiff, we hold that such failure was not evidence of a lack of good faith, especially since plaintiff admitted the conduct held by the committee to be dishonest and since there is no evidence that plaintiff requested such a hearing. See Long v. Southwestern Bell Telephone Co., 442 S.W.2d 462 (Tex.Civ.App.1969) writ ref'd, N.R.E.

Having concluded that there is no evidence of a lack of good faith on the part of the committee regarding its determination that plaintiff's employment was terminated by reason of dishonest conduct, we hold that under the terms of the instrument governing the profit sharing plan such determination was conclusive as to all parties and the committee's denial of plaintiff's claim was proper.

The judgment of the Court of Civil Appeals affirming the trial court's judgment as to defendant Neuhoff Bros. Packers is left undisturbed. The judgment of the Court of Civil Appeals as to defendants-petitioners Neuhoff Bros. Packers Management Corp. and Republic National Bank of Dallas (trustee) is reversed and the judgment of the trial court is affirmed.