Harold R. BRUNER et al., Appellants,

v.

MERCANTILE NATIONAL BANK et al., Appellees.

No. 17419.

Court of Civil Appeals of Texas, Dallas.

May 8, 1970.

Rehearing Denied June 12, 1970.

Michael H. O'Brien, Jim Foreman, Baker, Foreman & Boudreaux, Dallas, for appellants.

Timothy E. Kelley, Thompson, Knight, Simmons & Bullion, Stanley Neely, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

BATEMAN, Justice.

The appellants, Harold R. Bruner and his former wife Jo Ann Bruner Walters, sued to recover disability benefits under a written Retirement Plan for Employees of Standard Manufacturing Co., Inc. The defendants were Mercantile National Bank as Trustee of the Plan, Standard Manufacturing Co., Inc., and the three individual members of the Retirement Committee. The judgment, based on the jury verdict, was that appellants take nothing, and they appeal on nine points of error.

The retirement plan in question is funded entirely by contributions of the employer, Standard Manufacturing Co., Inc., which retains no rights to the funds. The plan provides for payment of retirement benefits to qualified participants upon the occurrence of certain events, including disability retirement. Section 2.4 of the plan provides, in part, that a participant may retire from the service of the company under the plan if he becomes totally and permanently disabled, as those terms are defined in Paragraph (B) of Section 2.4 of the plan, as follows:

"*Total and Permanent Disability*: A participant will be considered totally disabled if, in the opinion of the retirement committee, he is wholly prevented from engaging in any occupation for wage or profit; and a participant will be considered permanently disabled if, in the opinion of the retirement committee, such participant is likely to remain so disabled continuously and permanently * * *."

Section 5.1 of the plan provides that it shall be administered by a retirement committee appointed by the Board of Directors, under certain rules and regulations and with certain powers set forth in Sections 5.4 and 5.5, as follows:

"5.4—*RULES AND REGULATIONS OF RETIREMENT COMMITTEE*

The retirement committee shall have the authority to make such rules and regulations and to take such action as may be necessary to carry out the provisions of the plan and will, subject to the provisions of the plan, decide any questions arising in the administration, interpretation and application of the plan, which decisions shall be conclusive and binding on all parties. The retirement committee may delegate any part of its authority and duties as it deems expedient."

"5.5—*POWERS OF RETIREMENT COMMITTEE*

In order to effectuate the purposes of the plan, the retirement committee shall have the power to construe the plan, to supply any omissions therein, to reconcile and correct any errors or inconsistencies, and to make equitable adjustments for any mistakes or errors made in the administration of the plan, and all such actions or determinations made by the retirement committee in good faith shall not be subject to review by anyone."

At all times relevant here the retirement committee has consisted of W. N. Oswald, his son Norman Dean Oswald, and his wife Grace Lillian Oswald, the principal shareholders of Standard Manufacturing Co., Inc. The retirement plan became effective November 1, 1962. The appellant Harold R. Bruner began his employment on or about September 15, 1961 as a welder, continuing in that work until May 24, 1963.

On May 25, 1963, while receiving a hypodermic injection of vitamins in the office of a private physician, Bruner suffered a cerebral hemorrhage resulting in paralysis of his right leg and arm, loss of hearing in his right ear, loss of the peripheral vision in his right eye, and impairment of his speech and mental faculties. Although still undergoing physiotherapy Bruner returned to work at Standard Manufacturing Co., Inc. on July 15, 1963, being assigned deburring work, which consisted of removing sharp edges of newly manufactured metal pieces by the use of sandpaper, a file or other abrasives, and which he could do with his left hand and arm. It 'was deemed too dangerous for him to resume work as a welder. This continued until he was discharged on January 3, 1964. He applied for disability benefits under the retirement plan and the application was referred to the Retirement Committee. That committee, after consultation with the company attorney, denied the application. The committee refused a request to review the decision, whereupon this suit was filed.

The jury found in answer to Special Issues Nos. 1, 2 and 3 that Bruner sustained total and permanent disability beginning January 2, 1964 but in answer to Special Issues Nos. 4 and 5 that the Retirement Committee's decision was not arbitrary and was not made in bad faith.

■ In their third point of error appellants say the trial court erred in failing to disregard the jury's answers to Special Issues Nos. 4 and 5, and entering judgment thereon, because Bruner "had a vested property right in his retirement benefits and an inherent right to appeal the decision of the Committee." In their fifth point of error they say the court erred in rendering judgment on the answers to Special Issues Nos. 4 and 5 "for the reason that said clause of the contract making the findings of the Committee binding is violative of the due process provisions of the Constitution." Appellees reply that these points were not preserved, but were waived, because they were not included in the motion

for new trial. In neither the motion to disregard nor the amended motion for new trial is either of these points brought to the attention of the trial court for a ruling. Therefore, they were waived. Rules 320, 321, 324, and 374, Vernon's Texas Rules of Civil Procedure; City of Sweetwater v. McEntyre, 232 S.W.2d 434, 436 (Tex.Civ.App., Eastland 1950, writ ref'd n. r. e.); Swafford v. Boyles, 437 S.W.2d 306 (Tex.Civ.App., El Paso 1969 no writ); Pearce v. Cross, 400 S.W.2d 622 (Tex.Civ.App., Fort Worth 1966, affirmed Tex., 414 S.W.2d 457). The third and fifth points of error are therefore overruled.

By their first point of error appellants contend that the court erred in basing its judgment on that portion of the contract making the decision of the retirement committee binding "because said portion of. the contract is void by reason of being against public policy." By their second, fourth and sixth points of error appellants attack the findings in response to Special Issues Nos. 4 and 5, and the judgment based thereon, for the reasons that (2) this "usurps the Court of its power and is contrary to public policy," and (4) "because the answers to the same were immaterial and irrelevant," and (6) because "the contract was executory."

The parties agree that beneficial provisions of such plans are ꞌnot gifts but are additional compensation in which the employees may acquire vested interests and that each plan constitutes a contract between the employer and its employees. Appellants' suit and appellees' defense are based entirely on the contract. That contract, however, does not give the employee a pension merely if he is totally and permanently disabled, or if a jury shall find him to be totally and permanently disabled; it is given only if he has a condition which, *in the opinion of the retirement committee*, wholly prevents him from engaging in any occupation for wage or profit, and if, *in the opinion of the retirement committee*, he is likely to remain so disabled continuously and permanently.

Appellants assumed the burden of proving by a preponderance of the evidence that the adverse decision of the committee was either arbitrary or made in bad faith. Having failed to obtain favorable findings in this respect, and without questioning the sufficiency of the evidence to support the unfavorable findings, they now attack the validity of the above quoted provisions of the plan giving the retirement committee broad powers to make unreviewable decisions. They argue that these provisions are against public policy, and hence void, because: (1) the employee is deprived of an inherent right to appeal, (2) because the plan in effect usurps the powers of the courts, and (3) because, since the retirement committee is composed of the principal officers and shareholders of the company, who are also participants in the plan, the contract in effect gives the company the right to judge its own case and makes the decisions of the committee biased and unfair as a matter of law.

■ No authority is cited, and we know of none, giving an employee an inherent right of appeal in such cases. This plan is a contract, binding alike on employer and employee, and it specifically abrogates any right of appeal. To seek the benefits accruing under the contract is to submit to the burdens thereof; the bitter must be accepted with the sweet.

■ The contention that the provisions in question are against public policy as in effect ousting the courts of jurisdiction likewise fails. Appellants cite in support of their argument authorities relating to arbitration. They are inapplicable here, for this is not a contract to arbitrate. We are unaware of any public policy that would be offended by such an agreement.

■ Neither do we see any merit in the contention that the court should have disregarded the findings in question "because the contract was executory."

■■ We are also unable to agree with appellants' argument that the provisions of the plan in question are unenforceable because the committee is composed of three members of one family who own practically all of the stock of the employing corporation. The right of management to appoint such committees has been recognized several times by the courts of Texas. Long v. Southwestern Bell Telephone Co., 442 S.W.2d 462 (Tex.Civ.App., San Antonio 1969, writ ref'd n. r. e.); Dowling v. Texas and N. O. R. Co., 80 S.W.2d 456 (Tex.Civ. App., Galveston 1935, writ ref'd). See also the recent case of Neuhoff Bros. Packers Management Corp. v. Wilson, Tex., 453 S.W.2d 472. There, as here, the retirement committee consisted of members of the family which controlled the corporation. There, as here, the members of the committee consulted with the company's attorney before deciding the issue. The Supreme Court held that there was no evidence that the committee failed to act in good faith, and that its determination of the matter was conclusive as to all parties.

Appellants' Points of Error Nos. 1, 2, 4 and 6 are overruled.

■ Appellants' seventh point of error says the trial court erred in failing to render judgment in their favor upon the jury's answers favorable to them (without regard to the unfavorable answers to Special Issues Nos. 4 and 5). In view of what we have said above, it is obvious that this point is without merit. It is overruled.

■ In their eighth and ninth points of error appellants say there is no evidence of probative force to support "such verdict" and that "such verdict" is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. These points as stated are too general to require consideration. Rule 418, T.R.C.P.; Reserve Life Ins. Co. v. Jansen, 357 S.W.2d 770 (Tex.Civ.App., Waco 1962, writ ref'd n. r. e.).

However, on looking to the statement and argument under them, Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478

(1943), we see that the attack is leveled, not at the entire verdict, but only the answers to Special Issues Nos. 4 and 5.

In their assault upon those findings appellants point to the evidence of Bruner's paralysis which deprives him completely of the use of his right arm and leg, and particularly his loss of the ability to read, to remember, to add, subtract and multiply, his loss of hearing in his right ear, and his diminished capacity to express himself and to comprehend. They also remind us of the evidence that after he returned to work he injured his right arm and leg and was unable to feel it. They argue that the two members of the retirement committee who made the decision made only a cursory investigation of Bruner's condition and his employment possibilities, and that they had a letter from the company doctor, who had examined Bruner and reported that he doubted if Bruner's paralysis "and the inability to drive an automobile or to read would enable him to retain such employment for any significant time." In evidence also was a printed form entitled "Separation Notice" dated January 10, 1964, signed with the initials of the company's personnel manager, giving "sickness" as the reason for separation and reciting under "Remarks" the following:

"Right side of body paralyzed causing him not to be able to perform any duties connected with his job."

Appellants also remind us of undisputed evidence that the two members of the retirement committee who made the decision, being officers of the corporation, were also covered by the retirement plan.

There was also testimony that Bruner had just as much use of his left arm and leg as he ever had; that the vision in his left eye was unimpaired and that he had lost only the peripheral vision in the right eye; that he can comprehend and respond to straightforward questions; that he can walk if he wears a brace on his right leg; and that when he resumed work he was examined by the company doctor who expressed the opinion that it would not be harmful to him to do so. The company employs a number of handicapped people, several of whom have only one arm and one of whom has braces on both legs. It was shown that, while Bruner could not do the welding he had done previously, he could do the deburring work and other tasks assigned to him, and that the reason for his discharge was that, despite instructions not to do so, Bruner would attempt to resume his welding, which was deemed by the committee to be dangerous to himself and other employees.

That Bruner has suffered dreadful physical and mental handicaps is not questioned. However, we must bear in mind that we are working here with a standard of disability quite different from those in workmen's compensation and other insurance cases. The question here is whether the committee's decision was arbitrary or made in bad faith. The trial court defined "arbitrary" as "a willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case," and appellants find no fault in this definition.

The foregoing brief summary shows, we think, that there was evidence of probative value to support the submission of Special Issues Nos. 4 and 5 and the answers of the jury thereto. Moreover, although the decision of the committee seems rather severe, we cannot say from our careful study of the entire record that either finding is so against the weight and preponderance of the evidence as to be clearly wrong. Points Nos. 8 and 9 are overruled.

The judgment is affirmed.