**TEXACO, INC., Appellant,**

v.

**Billy O. ROMINE, Appellee.**

No. 6473.

Court of Civil Appeals of Texas, El Paso.

April 14, 1976.

Rehearing Denied May 5, 1976.

Oliver J. Butler, Jr., Houston, Kemp, Smith, White, Duncan & Hammond, William Duncan, El Paso, for appellant.

Malcolm McGregor, Philip T. Cole, El Paso, for appellee.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This case involves the right of a discharged Texaco employee to benefits under a Permanent Total Disability Plan, the terms of which specifically state that eligibility is to be determined solely by the Company. A jury found that Texaco acted in bad faith or arbitrarily in refusing the benefits of the Plan and, based upon such finding, judgment was entered for the plaintiff, Romine. We reverse and render that judgment.

On appeal, the question of the legal sufficiency of the evidence to support the jury finding is presented. There are also questions of admissibility of medical testimony by a lay witness and whether such evidence was harmless in a case of this nature.

The parties will be referred to by name and the Permanent Total Disability Plan will be referred to as the Plan. Romine had been employed by Texaco some fifteen years when he was discharged on April 1, 1970, for insubordination and the continuation of other conduct for which he had previously been disciplined. Some seven months after his discharge, he sought the benefits of the Plan and Texaco's refusal resulted in this suit. The Plan provided payments to the employee if he became permanently and totally disabled, and Romine's years of service entitled him to one-fourth of his regular pay until he reached the age of sixty-five. The Plan was incorporated into the collective bargaining Agreement between Texaco and the Oil, Chemical and Atomic Workers International Union of which Romine was a member. That Agreement specifies that the provisions of the Plan will determine all questions arising under and in connection with it. Pertinent provisions of the Plan are:

"B. Determination of what Constitutes Permanent Total Disability

"The Company alone shall, in any case, determine what constitutes permanent and total disability, when the same com-

menced, and at any time reverse or alter such determination."

And further:

" * * *

"No benefits shall be allowed or paid under this Plan:

" * * *

"(c) If the employe's disability was not permanent or total at the time of the termination of his employment with the Company."

There is a further provision that the Company's determination is conclusive in respect of any question which may arise in connection with the interpretation or administration of the Plan and "shall be final and conclusive and binding on all employes and all others in any manner concerned." The employee pays nothing for coverage under the Plan, and it is provided specifically that the Plan is entirely voluntary on the part of the Company; and, that an employee has neither a vested nor a contractual right to benefits under it.

■ The law covering the rights of parties in a case like this is well settled and is not in question here. Briefly, that law is that in a situation such as this one, where there is an employer-funded plan which is made a part of the employment contract between the employer and the employee, and with provisions which make the employer's determination final, that if the employer determines that an employee is not entitled to benefits, the only way that determination can be attacked is by showing that there was bad faith or fraud in the employer's actions. This Court so held in *Webster v. Southwestern Bell Tel. Co.*, 153 S.W.2d 498 (Tex.Civ.App.—El Paso 1941, writ ref'd). It was there said "that the action of the committee is final and conclusive and binding upon all its employees and not subject to attack in the courts, in the absence of an allegation and proof of fraud or bad faith." The same holding in similar cases can be found in the cases of *Magnolia Petroleum Co. v. Butler*, 86 S.W.2d 258 (Tex.Civ.App.—Fort Worth 1935, writ dism'd); *Long v. Southwestern Bell Telephone Company*, 442 S.W.2d 462 (Tex.Civ.

App.—San Antonio 1969, writ ref'd n. r. e.); *Bruner v. Mercantile National Bank*, 455 S.W.2d 323 (Tex.—Dallas 1970, writ ref'd n. r. e.); *Neuhoff Brothers Packers Management Corporation v. Wilson*, 453 S.W.2d 472 (Tex.1970).

Recognizing the settled condition of the law in this area, the Court submitted only one issue which, with its instructions, is as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that there was arbitrariness or bad faith on Texaco's part in its failure to determine that Plaintiff was entitled to benefits under its Permanent Total Disability Plan at the time it terminated Plaintiff's employment?

"In connection with Issue No. 1 you are instructed that 'bad faith' means 'dishonesty' or 'unfairness'. The term means any act, omission or concealment which involves a breach of legal duty, trust or confidence by which an undue advantage is taken of another.

"You are further instructed that 'arbitrariness' means a willful and unreasonable action, without consideration and in disregard of the facts or circumstances of the case.

"Answer 'Yes' or 'No'.

"ANSWER: __Yes__ "

■ Appellant's Points of Error Numbers One and Two, contending that the Court erred in overruling its motion for an instructed verdict at the conclusion of all the evidence and that the Court should have granted its motion for judgment notwithstanding the verdict, raise the contention that there is no evidence to support the submission of the above issue or to sustain the answer thereto by the jury. We are of the opinion that there is no evidence to support the finding. In reaching that conclusion, we have followed the familiar rule of law that an appellate court in passing on the legal question of no evidence will view the evidence in its most favorable light, considering only the evidence and the inferences which support a jury finding, and rejecting inferences to the contrary. *Garza*

*v. Alviar*, 395 S.W.2d 821 (Tex.1965); Calvert, No Evidence and Insufficient Evidence, 38 Texas L.Rev. 362 (1960).

A reading of the voluminous statement of facts reveals no act or omission or concealment which would amount to a breach of legal duty that would amount to bad faith as defined by the Court, nor is there any evidence of willful and unreasonable action that would amount to arbitrariness as defined. Appellee points to the fact that Texaco's representative, its personnel man Smith, took only fifteen or twenty minutes to determine that Romine was not entitled to benefits. This occurred when Romine first made known his claim for benefits under the Plan, some seven and one-half months after his discharge. Any haste in this initial announcement of denial has been cured by time because his claim has been pending ever since and is denied by the Company until this day. There has been ample time for consideration of his entitlement for his claim had been pending for five years prior to trial.

It is urged that there was bad faith or arbitrariness on Texaco's part in not giving Romine a physical examination. At the time of his discharge, he was claiming no disability or benefits under the Plan; under the issue, the jury is to determine the existence of bad faith at the time of Romine's discharge; it is difficult to accuse Texaco of bad faith at that time, for it did not know of any disability claim until seven and one-half months later. Aside from the fact that the Plan made no provision for such physical examination, we fail to see any bad faith in not sending a man to a doctor to find out what his condition was seven and one-half months before. In his fifteen years of employment, Romine had various health problems but he was all right at the time of his discharge. At the time of his discharge, Texaco knew that he had, in the past two years, had no problems with his health and had not missed any work because of health problems; that he had not availed himself of Texaco's sickness and accident plan under which he could draw full pay for time off; two years prior to his discharge, there was in his file a medical report that he was not disabled, and Texaco had not been made aware of any change in his condition since that report. Under the issue, the act of bad faith is Texaco's failure to determine that Romine was entitled to benefits, and there is simply no evidence to support the jury answer in the affirmative.

Complaint is made of the admission of testimony by a Professor Dillman as to whether Romine was totally disabled to do his job at the time he was discharged. The Professor has a degree of PhD in Management Statistics and testified to experience in labor management, evaluating disability claims, service on a Civil Service Commission, and consulting work to a number of firms in the area of personnel. The Professor would qualify as an expert in that field. Thus, he gave an abstract opinion as to how a percentage medical disability might be total occupational disability depending on the occupation. Such an opinion would be within the Professor's field of expertise in employment. The testimony complained of was not, however, within the witness' field.

Based on a hypothetical set of facts, the Professor was asked to express his opinion as to Romine's "ability to do the job of a—a heavy manual job, back in April of 1970." He responded: " * * * he would have been totally occupationally disabled from performing any type of heavy labor—any type of heavy work normally associated with blue collar type professions." The Court erred in permitting this testimony from a non-medical expert. The rule is recognized that a lay witness may testify to the physical condition of a person whom he has observed performing a certain task or attempting certain labors, but such was not the case here; the basis of the opinion was not things that the witness had observed. It was based on information furnished him prior to trial; on the basis of such, he expressed the opinion that on a given date some five years previous the man was disabled. The rule is also recognized that the receipt of expert testimony must be left largely to the discretion of the trial judge, *Wilson v. Scott*, 412 S.W.2d 299

(Tex.1967), but that rule is not involved here, for this witness was not testifying within his own field of expertise. Though an expert in his own field, when it came to expressing a medical opinion he was no more qualified than the lowest lay witness on the totem pole.

The next question is whether the admission of this evidence was harmless error, whether in our opinion it was reasonably calculated to cause and probably did cause the rendition of an improper verdict. It had no bearing on an ultimate issue—or for that matter, any issue. The Plan did not define disability and, as noted earlier, whether or not a workman is disabled under the Plan is to be determined solely by the Company. However, it appears that a jury could be influenced by evidence that the workman was disabled at the time of his discharge; that being disabled, and thus entitled to the benefits of the Plan, the Company acted in bad faith in denying him those benefits after fifteen years of employment. That the jury may have so reasoned is evidenced by the fact that it found that the Company did act in bad faith when there was no evidence of it.

The judgment is reversed, and judgment is here rendered that Appellee take nothing by his suit.