James E. **GOUDIE,** Appellant,

v.

**HNG OIL COMPANY,** Appellee.

No. 08-85-00056-CV.

Court of Appeals of Texas, El Paso.

May 14, 1986.

Rehearing Denied June 18, 1986.

Richard B. Seward, Farmersville, Bruce B. Hart, Law Office of Robert P. Baxter, Jr., P.C., Dallas, for appellant.

Milton L. Bankston, Bankston, Wright & Greenhill, Austin, Joe H. Foy, Bracewell & Patterson, Houston, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

James E. Goudie appeals from a judgment non obstante veredicto which denied him recovery of benefits under an employer's executive incentive compensation plan after he had applied for and received early retirement from the company. We reverse and render.

Mr. Goudie was employed as regional geologist for HNG Oil Company from June, 1976, to June 1980. As an employee, he qualified for the company's regular retirement program which covered all employees. Because of his position, he also qualified for and was assigned points by the Executive Compensation Committee which would permit him to receive extra compensation under the company's executive incentive compensation plan. Benefits under this plan were paid to key company employees based upon their service to the company and profits earned after all costs had been recovered from successful operations in each calendar year.

The parties stipulated that had Mr. Goudie been paid for earned points, he would have recovered $23,991.60 for the year 1977 and $47,497.50 for the year 1979, with an anticipated $5,081.40 in future years.

In April, 1980, Mr. Goudie wrote to the company president requesting early retirement. The letter stated he had a small heart attack and was hospitalized for three days in April, 1979, and that he had similar symptoms a few weeks later. The letter said his doctors had recommended the elimination of stress in order to prevent another heart attack. His request was approved and he made an election on payment of his regular retirement benefits. He then went to work for CNR Resources doing geological work similar to that at HNG Oil Company, but with a $20,000.00 annual increase in salary.

In April, 1981, Mr. Goudie wrote to HNG Oil Company to inquire about his benefits under the incentive compensation plan. After an exchange of several letters and medical reports, the company Executive Compensation Committee, in March, 1982, determined that Mr. Goudie had not qualified for payments under the plan. Mr. Goudie then filed suit to recover amounts to which he was entitled for points awarded to him as a participant under the plan for 1976, 1977 and 1978 and to obtain points

and compensation for 1979. He claimed he was entitled to the benefits of the plan under his early retirement from the company. On the day of trial, he filed a trial amendment alleging the decision of the compensation committee in refusing payments was arbitrary, capricious or made in bad faith.

In response to the only issue submitted to the jury, it found there was arbitrariness or bad faith on the part of the compensation committee in refusing payments to Mr. Goudie after he took early retirement. The plaintiff's case was built around the fact that the committee had denied compensation to Mr. Goudie and that another employee, Jack Chrismon, a geologist who also retired in 1981 at age fifty-five, was paid under the incentive plan.

Mr. Chrismon testified he was employed by HNG Oil Company in 1977 as a geologist. He had a massive heart attack in March, 1980. After returning to work in the summer of 1980, his doctor recommended a reduced work load and a change of work environment. He applied for and received early retirement in January, 1981, after he became fifty-five years old. When he requested payments under the incentive plan on the basis of his early retirement, they were denied. The request was subsequently reconsidered and granted on the basis that he was totally and permanently disabled. The medical report from his cardiologist said he sustained a cardiac arrest due to inferior myocardial infarction. The patient was said to have ischemic heart disease with significant obstructive disease of his right coronary artery. The doctor advised that he not smoke, he recommended a diet and he suggested that the patient be removed from stressful situations. The report concluded that Mr. Chrismon is not physically qualified to continue his employment and said he is "totally and permanently disabled to perform the duties of his employment as a senior geologist." After his retirement, Mr. Chrismon did do some consulting work.

The medical report submitted to the compensation committee by Mr. Goudie stated he had symptoms of substernal chest pain with a final diagnosis of subendocardial myocardial infarction. He continued to have intermittent angina pectoris which was stress and job related. It was recommended that he not smoke, control his weight and avoid stress. It was also recommended that he discontinue stressful employment.

The Appellant presents two points of error contending that after taking early retirement he was entitled to his benefits under the Executive Incentive Compensation Plan as a matter of law and that the trial court erred in entering judgment non obstante veredicto where there was evidence to support the jury's verdict. The Appellee by a cross-point contends the trial court's definition of "bad faith" as used in connection with Special Issue No. 1 was erroneous.

In *Texaco, Inc. v. Romine*, 536 S.W.2d 253 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.), this Court said that the law in a situation such as this one, where there is an employer-funded plan which is made a part of the employment contract between the employer and the employee, and with provisions which make the employer's determination final, that if the employer determines that an employee is not entitled to benefits, the only way that determination can be attacked is by showing that there was bad faith or fraud in the employer's actions. The question of arbitrariness or bad faith is generally a fact question and they have not been established as a matter of law in this case. *Citizens Bridge Co. v. Guerra*, 152 Tex. 361, 258 S.W.2d 64 (1953); *Fenner v. American Surety Co. of New York*, 156 S.W.2d 279 (Tex.Civ.App.—Waco 1941, writ ref'd w.o.m.). But, with regard to the finding made by the jury, the trial court could render judgment non obstante veredicto only if a directed verdict would have been proper. Rule 301, Tex.R.Civ.P. The court could set aside the jury finding only if there was no evidence to support the answer to the special issue. In reviewing that determination, the appellate court

must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Dodd v. Texas Farm Products Company,* 576 S.W.2d 812 (Tex.1979).

■ It is without dispute that Mr. Goudie was a participant under the incentive plan and the parties have stipulated as to the value of his interest if he is qualified after having taken early retirement from the company. The company's employee retirement plan describes two retirement dates as being:

Early Retirement Date: The date upon which a Member has attained fifty-five years of age.

Normal Retirement Date: The date upon which a Member attains sixty-five years of age.

The incentive plan states:

"Retirement Date" means the date of retirement from the employ of HNG Oil, * * * upon attaining the age 65 or becoming totally and permanently disabled, or otherwise, pursuant to the terms of the * * * Employee Retirement Plan.

The provision which provides that the construction by the committee of any provision of the plan shall be final and conclusive also states that the committee shall determine, subject to the provisions of the plan:

The method of paying any amounts remaining to be paid in respect to Compensation Units theretofore awarded to a Participant who dies, becomes totally and permanently disabled, or otherwise retires pursuant to the * * * Employee Retirement Plan.

The dispute in this case is over the meaning of the term "otherwise." Neither party contends the agreement is ambiguous. Both parties have placed reliance upon the rule of "ejusden generis." The rule was summarized in *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944) as follows:

[W]here specific and particular enumerations of persons or things in a statute are followed by general words, the general words are not to be construed in their widest meaning or extent, but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned.

It is the company's position that "otherwise" relates to an employee's completion of his time to work either because of age or physical disability. This would exclude those who took early retirement at age fifty-five and might still have ten more productive years before reaching a normal retirement at age sixty-five. We believe "otherwise" relates to one's voluntarily leaving the company under some retirement plan as opposed to those who resign or are terminated and leave involuntarily. In fact, paragraph 8e provides that if a participant resigns or his employment is terminated other than because of retirement or disability, his compensation units shall be cancelled and no further payments shall be made to him. We must give some meaning to each and every term used by the drafter of the instrument. Under the company's interpretation, "otherwise" would have no meaning. A contract will not be construed so as to render some of its terms meaningless. *Blaylock v. American Guarantee Bank Liability Insurance Company,* 632 S.W.2d 719 (Tex.1982); *Chapa v. Reid,* 248 S.W.2d 299 (Tex.Civ. App.—San Antonio 1952, writ ref'd). Under our construction, "otherwise" includes the other type of retirement not expressly enumerated, i.e., early retirement, yet still a type of retirement as opposed to a resignation or involuntary dismissal. We conclude there is some evidence of arbitrariness or bad faith in the committee's interpretation of the plan which prohibits those who have taken early retirement from benefiting in the Executive Incentive Compensation Plan.

We also conclude that there is some evidence of arbitrariness or bad faith with regard to the determination that Mr. Chrismon was totally and permanently disabled but Mr. Goudie was not so disabled. Clearly Mr. Chrismon had a more severe heart attack. But, the evidence reflects that both employees sustained a myocardial in-

farction, both were advised to avoid stressful employment and to be concerned about their personal physical condition. Based upon their continuing symptoms and the medical advice, both employees concluded that they should take early retirement from HNG Oil Company. When we consider only the evidence and inferences tending to support the jury finding and disregard all evidence and inferences to the contrary, we conclude that there is some evidence to support the jury finding as to arbitrariness or bad faith in refusing to permit Mr. Goudie to receive incentive compensation after it had determined that Mr. Chrismon could recover those benefits. We overrule Appellant's Point of Error No. One and sustain Point of Error No. Two.

By a cross-point, the Appellee contends the trial court erred in its definition of "bad faith" and contends that such error probably caused an improper answer to Special Issue No. 1. The definition which the trial court used is identical to the one which the trial court used in *Texaco, Inc. v. Romine, supra.* In that case, this Court did not have before it any question about the definition given in connection with the special issue submission. In this case, the Appellee objected to the use of the word "unfairness" as part of the definition of bad faith. We have neither found nor been cited to any case which specifically approves or disapproves the use of the word "unfairness" in defining bad faith. Black's Law Dictionary, 5th Ed. (1979), does not mention the word unfairness in defining bad faith. It indicates that bad faith implies actual or constructive fraud, or a design to mislead or deceive another and that bad faith does not result from an honest mistake as to one's rights or duties, but by some interested or sinister motive. Legal Thesaurus, Burton (1980), includes within the list of synonyms of bad faith both "dishonesty" and "unfairness" which the trial court used in its definition. We conclude from a review of the entire definition given in connection with the special issue that reversible error is not disclosed. The cross-point is overruled.

The judgment of the trial court is reversed and judgment is rendered that James E. Goudie recover of and from HNG Oil Company those sums which the parties stipulated were due and owing under the company's Executive Incentive Compensation Plan, plus attorney's fees as stipulated to by the parties.

WARD, J., not sitting.